FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2012 DEC 13  PM 3: 08

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

PHYLLIS C. APPLEBY, an individual,

                Plaintiff,

v.

3:12-cv-1351-J-32 mcr

UNIVERSAL HEALTH SERVICES, INC.,
a Delaware corporation, PSYCHIATRIC
SOLUTIONS, INC., a Delaware corporation,
and BROADRIDGE CORPORATE ISSUER
SOLUTIONS, INC., a Pennsylvania corporation,

                Defendants.

_____/

## COMPLAINT

Plaintiff, Phyllis C. Appleby, an individual ("Appleby"), by and through her undersigned counsel, hereby sues Defendants, Universal Health Services, Inc., a Delaware corporation ("UHS"), Psychiatric Solutions, Inc., a Delaware corporation ("PSI"), and Broadridge Corporate Issuer Solutions, Inc., a Pennsylvania corporation, and alleges:

### PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Appleby is a 75 year-old widow woman subsisting on Social Security and residing in a rented apartment at 1845 Old Moultrie Road, No. 58, St. Augustine, Florida.

2.    Defendant UHS is a Delaware corporation with its principal place of business in King of Prussia, Pennsylvania.

3.    Defendant Psychiatric Solutions, Inc. is a Delaware corporation with its principal place of business in New Castle, Delaware and is a wholly owned subsidiary of UHS.

4.    Defendant Broadridge Corporate Issuer Solutions, Inc. is a Pennsylvania

corporation with its principal place of business in Lake Success, New York and was formerly known as StockTrans, Inc. (the "Transfer Agent").

5.      This Court has jurisdiction over this action by virtue of 28 U.S.C. § 1332. The parties are citizens of different states and the amount in controversy exceeds $75,000.00.

6.      Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims arose in this District, where Plaintiff resided at the time she suffered the losses for which she seeks relief.

7.      Defendants engage in continuous and systematic business activity in this District.

8.      All conditions precedent to bringing this action have been performed or occurred.

**FACTS**

9.      On March 27, 2000, as partial consideration for the sale of her business to Psychiatric Solutions, Inc., Appleby received 130,000 shares of Psychiatric Solutions, Inc. stock evidenced by Psychiatric Solutions, Inc. Stock Certificate No. 79 ("Certificate No. 79"). See **Exhibit A, March 27, 2000 Psychiatric Solutions, Inc. Certificate No. 79**. At closing, Appleby was provided with a copy of Certificate No. 79. On information and belief, Psychiatric Solutions, Inc. retained the original certificate. At this time, Appleby resided at 4190 Coastal Highway, St. Augustine, Florida 32084.

10.      On May 6, 2002, PMR Corporation, its wholly owned subsidiary, PMR Acquisition Corporation and Psychiatric Solutions, Inc. entered into an Agreement and Plan of Merger ("Merger Agreement") providing for a business combination pursuant to which PMR Acquisition Corporation would merge with and into PSI, with PSI continuing as the surviving

2

corporation. See **Exhibit B, May 6, 2002 Agreement and Plan of Merger.** This Merger Agreement was amended on June 12, 2002 and on July 7, 2002. See **Exhibit C, June 10, 2002 Amendment No. 1 to Agreement and Plan of Merger** and **Exhibit D, July 7, 2002 Amendment No. 2 to Agreement and Plan of Merger.**

11.    Section 1.7(b) of the Merger Agreement as amended provides:

(b) Conversion of PSI Capital Stock.

(i) Subject to Sections 1.7(c), 1.7(d), 1.7(e), 1.7(f) and 1.8(d), each share of common stock, par value of $0.01 per share, of PSI (the "PSI COMMON STOCK") issued and outstanding immediately prior to the Effective Time (other than shares to be canceled in accordance with Section 1.7(e)) shall be converted into the right to receive 0.115125 shares of fully paid and nonassessable shares of PMR Common Stock.

See Exhibit D, July 7, 2002 Amendment No. 2 to Agreement and Plan of Merger at 2, ¶ 2.1.

12.    Section 1.7(f) provides:

(f) FRACTIONAL SHARES.  No fraction of a share of PMR Common Stock will be issued, but in lieu thereof each holder of shares of PSI Capital Stock who would otherwise to entitled to a fraction of a share of PMR Common Stock (after aggregating all fractional shares of PMR Common Stock to be received by such holder) shall receive from PMR an amount of cash (rounded to the nearest whole cent) equal to the product of (i) such fraction, multiplied by (ii) PMR Stock Price.

See Exhibit B, May 6, 2002 Agreement and Plan of Merger at 6, ¶ 1.7(f).

13.    Section 1.8(a), Surrender of Certificates, provides:

(a) EXCHANGE AGENT.  PMR's transfer agent shall act as exchange agent (the "EXCHANGE AGENT") in the Merger.

See Exhibit B, May 6, 2002 Agreement and Plan of Merger at 6, ¶ 1.8(a).

14.     The Transfer Agent was PMR's transfer agent and acted as the exchange agent

in the Merger.  Section 1.8(c) provides:

> (c) EXCHANGE PROCEDURES. Within ten (10) business days
> after the date hereof, PMR shall deliver to PSI (i) a form of letter
> to transmittal (which shall specify that delivery shall be effected,
> and risk of loss and title to the Certificates (as defined below)
> shall pass, <u>only upon receipt by the Exchange Agent of a
> Certificate or Certificates, which immediately prior to the
> Effective Time represented outstanding shares of PSI Capital
> Stock, whose shares were converted into the right to receive
> shares of PMR Common Stock</u> (and cash in lieu of fractional
> shares) pursuant to Section 1.7, and shall be in such form and
> have such other provisions as PMR may reasonably specify) and
> (ii) instructions for use in effecting the surrender of the
> Certificates in exchange for certificates representing shares of
> PMR Common Stock (and cash in lieu of fractional shares).  PSI
> shall mail or provide such letters of transmittal and such
> instructions to every holder of record of a Certificate.  <u>To the
> extent at Closing PMR shall have received Certificates</u>, together
> with corresponding letters of transmittal, duly completed and
> validly executed in accordance with the instructions thereto, then
> <u>within thirty (30) business days after the Closing</u>
>
> <u>(i) such holders of record submitting the same shall be entitled to
> receive a certificate representing the number of whole shares of
> PMR Common Stock</u> and payment in lieu of fractional shares
> which such holder has the right to receive pursuant to Section 1.7,
> and
>
> (ii) <u>such Certificates shall be canceled</u>.

<u>See</u> Exhibit B, May 6, 2002 Agreement and Plan of Merger at 6, ¶ Section 1.8(c) [emphasis

added].

15.     On July 9, 2002, the merger between PMR Acquisition Corporation and

Psychiatric Solutions, Inc. was consummated and PMR came into actual possession of

Certificate No. 79 by and through its wholly owned subsidiary.  PMR Corporation concurrently

changed its name to Psychiatric Solutions, Inc. ("PSI").

16.     Pursuant to Section 1.7(b) of the Merger Agreement, each share of Appleby's Psychiatric Solutions, Inc. stock was converted into the right to receive 0.115125 shares of PMR Corporation, now PSI, stock for a total of 14,966.25 shares of PMR Corporation.

17.     The Transfer Agent acting on behalf of PSI, in receipt of Appleby's original Certificate No. 79, as required by Section 1.8(c) of the Merger Agreement, booked the conversion of Appleby's 130,000 shares of Psychiatric Solutions, Inc. into 14,966.25 shares of PMR Corporation in Account Number 499-187. See **Exhibit E, November 21, 2012 Total Holder Information report for Broadridge Account Number 499-187.**

18.     The Transfer Agent rounded off the fractional .25 share that resulted from the conversion of the Psychiatric Solutions, Inc. shares to PMR shares and issued Certificate No. 2 representing the 14,966 whole shares that Appleby was entitled to receive pursuant to Section 1.7 of the Merger Agreement. This transaction was accomplished in Account Number 502-243. See **Exhibit F, November 21, 2012 Total Holder Information report for Broadridge Account Number 502-243**.

19.     In accordance with Section 1.8(c)(ii) of the Merger Agreement, the Transfer Agent should have canceled Certificate No. 79 but did not. As a result of the Transfer Agent's error in not canceling Certificate No. 79, since August 5, 2002, the Transfer Agent's records show Appleby owning 14,966.25 shares in Account Number 499-187 and 14,966 shares in Account Number 502-243 for a total of 29,232.25 shares.

20.     Thereafter, the Transfer Agent attempted to deliver Certificate No. 2 to Appleby by mailing it to 4190 Coastal Highway, St. Augustine, Florida 32084. At that time, Appleby was

residing at 3344 Cedar Glen Way, St. Augustine, Florida 32086. See **Exhibit G, December 11, 2012 email correspondence from Broadridge to T. Safi.**

21.     Certificate No. 2 was not delivered to Appleby, but was returned to the Transfer Agent.

22.     On January 9, 2006, PSI distributed to its shareholders a 2:1 stock dividend ("PSI Stock Dividend"). The Transfer Agent's records showed Appleby owning 29,232.25 shares of PSI. On the basis of the Transfer Agent's records, the Transfer Agent should have distributed 58,464.50 shares to Appleby. Apparently recognizing the error in its records, the Transfer Agent and/or PSI improvised a shoddy, improper and illegal solution and issued Stock Certificate No. 2343 representing 14,966 shares of PSI instead of correcting its error and finally canceling Certificate No. 79 and then issuing a new certificate for 29,232 shares.

23.     Thereafter, the Transfer Agent mailed Certificate No. 2343 to 4190 Coastal Highway, St. Augustine, Florida 32084, in reckless disregard of the fact the address was incorrect and known by the Transfer Agent to be incorrect since 2002. See Exhibit G.

24.     Certificate No. 2343 was not delivered to Appleby and not returned to the Transfer Agent. If Certificate No. 2343 was lost, it was lost through the error of the Transfer Agent, not Appleby.

25.     In 2009, Appleby resided in a rented apartment at 1845 Old Moultrie Road, Apt. No. 58, St. Augustine, Florida 32084, where she resides today.

26.     On March 8, 2010, StockTrans, Inc. changed its name to Broadridge Corporate Issuer Solutions, Inc.

27.     On May 16, 2010, UHS, Olympus Acquisition Corp., a wholly owned subsidiary

6

of UHS, and PSI entered into an Agreement and Plan of Merger (the "UHS/PSI Merger Agreement") providing for a business combination pursuant to which Olympus would merge with and into PSI, with PSI continuing as the surviving corporation. See **Exhibit H, Agreement and Plan of Merger dated May 16, 2010**.

28.     At this time, Appleby owned 44,898 shares of PSI stock and was entitled to receive $1,515,307.50 of Merger Consideration.

29.     In the UHS/PSI Merger Agreement, UHS is referred to as "Parent." Section 2.02 (b) of the UHS/PSI Merger Agreement provides, in part:

> (b) <u>Exchange Procedures</u>.  Promptly after the Effective Time, <u>Parent shall cause to be mailed</u> to each person who was, at the Effective Time, a holder of record of Shares entitled to receive the Merger Consideration pursuant to Section 2.01(a): (i) a letter of transmittal (which shall be in customary form and shall specify that delivery shall be effected, and risk of loss and title to the Shares shall pass, only upon proper delivery of the Shares to the Paying Agent) and (ii) instructions for use in effecting the surrender of the certificates evidencing such Shares (the "<u>Certificates</u>") or the non-certificated Shares represented by book-entry ("<u>Book-Entry Shares</u>") in exchange for the Merger Consideration.

See Exhibit H at 4,  ¶ 2.02(b) [emphasis added].

30.     Appleby never received a letter of transmittal or instructions for exchange of her shares for Merger Consideration from UHS or anyone else.

31.     On November 15, 2010, the merger between Olympus Acquisition Corp. and PSI was effective. Under the UHS/PSI Merger Agreement, PSI shareholders were entitled to receive $33.75 per share in exchange for each share of PSI common stock ("Merger Consideration"). At this time, Appleby owned 44,898 shares of PSI stock and was entitled to receive

$1,515,307.50 of Merger Consideration.

32.     The Transfer Agent was employed by UHS as its paying agent responsible for

payment of the Merger Consideration, and also served as UHS's stock transfer agent and PSI's

stock transfer agent.

33.     In the UHS/PSI Merger Agreement, PSI is referred to as the Surviving

Corporation.  Section 2.02(d) of the UHS/PSI Merger Agreement provides:

> (d) <u>Termination of Exchange Fund</u>.  Any portion of the Exchange
> Fund that remains undistributed to the holders of Shares one year
> after the Effective Time <u>shall be delivered to the Surviving
> Corporation</u>, upon demand, and any holders of Shares who have
> not theretofore complied with this Article II shall thereafter look
> only to Parent or the Surviving Corporation for, and Parent and
> the Surviving Corporation shall remain liable for, payment of
> their claim for the Merger Consideration.  Any portion of the
> Exchange Fund remaining unclaimed by holders of Shares as of
> a date which is immediately prior to such time as such amounts
> would otherwise escheat to or become property of any
> Governmental Authority shall, to the extent permitted by
> applicable Law, become the property of Parent free and clear of
> any claims or interest of any person previously entitled thereto.

<u>See</u> Exhibit H at 4, ¶ 2.02(d) [emphasis added].

34.     On information and belief, on December 15, 2011, Appleby's Merger

Consideration was delivered by the Transfer Agent to PSI.

35.     In December 2011, Appleby received a letter from the Transfer Agent writing as

stock transfer agent for PSI, now owned by UHS.  The correspondence was correctly addressed

to her current residence, <u>where she lived for a year before the UHS/PSI Merger</u>. The Transfer

Agent requested that she certify the following statement and remit a completed IRS Form W-9:

> By signing this form and the attached W-9, I hereby certify my
> Social Security or Tax Identification Number and confirm that I

am the owner of the above-referenced Stock and that I have not
sold or disposed of same. Also, I confirm that I previously lived
at the above address.

See **Exhibit I, December 2011 letter from Broadridge to Appleby**. The Transfer Agent did

not inform Appleby of the:

| | |
|---|---|
| (a) | UHS/PSI Merger; |
| (b) | 2002 conversion of her 130,000 shares of PSI to 14,966.25 shares of PMR Corporation in Account Number 499-187; |
| (c) | 2002 issuance of Certificate No. 2 representing 14,966 shares of PMR Corporation in Account Number 502-243; |
| (d) | attempt to deliver Certificate No. 2 to her and its return to the Transfer Agent; |
| (e) | 2006 2:1 stock dividend; |
| (f) | Transfer Agent's error in failing to cancel Certificate No. 79 and the 14,966.25 shares in Account Number 499-187; |
| (g) | Transfer Agent's improvised, improper and illegal attempt to correct its error by issuing Certificate No. 2434 for 14,966 shares; |
| (h) | UHS/PSI merger; or |
| (i) | Appleby's entitlement to $1,515,307.50 in Merger Consideration. |

36.     In December 2011, Appleby executed the certification and remitted a W-9 as

requested by the Transfer Agent.  She also wrote a letter to the Transfer Agent expressly

requesting information regarding her stock ownership in PSI.  See **Exhibit J, December 21,**

**2011 letter from P. Appleby to Broadridge**.

37.     On July 31, 2012, the Transfer Agent sent Appleby a second correspondence

identical to the December 2011 letter. The Transfer Agent ignored her December 2011 request

for information regarding her stock ownership and failed to inform Appleby of the material and

important activity in her accounts as set forth above. See **Exhibit K, July 31, 2012 letter from**

**Broadridge to Appleby**.  Appleby executed the certification, remitted another W-9 and again

inquired about her PSI stock ownership. See **Exhibit L, August 16, 2012 letter from P.**

**Appleby to Broadridge**.

38.     On October 10, 2012, the Transfer Agent on behalf of PSI responded to Appleby's July 31 letter.  See **Exhibit M, October 10, 2012 letter from Broadridge to Appleby**.  In response to Appleby's request for information about her stock, the Transfer Agent provided a "Total Holder Information" report for Account Number 499-187, in which the Transfer Agent continued to incorrectly book 14,966.25 shares which the Transfer Agent should have canceled in 2002 along with Certificate No. 79 but failed to do so.  The Transfer Agent provided misinformation about instructions for the exchange of her shares in Account Number 499-187. Outrageously, the Transfer Agent still failed to inform Appleby of the material and important activity in her accounts as set forth above.

39.     On November 8, 2012, Appleby's counsel wrote to Broadridge, again requesting information on the derivation of the 130,000 shares represented by Certificate No. 79 into 14,966.25 shares shown on the Report for Account Number 499-187. See **Exhibit N, November 8, 2012 letter from G. Ridge to Broadridge**.

40.     On November 12, 2012, the Transfer Agent advised that a permanent stop transfer had been placed against Certificate No. 79, and that in order to replace the certificate, Appleby must apply for a lost instrument bond through Travelers Casualty and Surety Company of America. See **Exhibit O, November 12, 2012 letter from Broadridge to P. Appleby**. At this point, the Transfer Agent was engaged in an affirmative concealment of the material and important activity in her accounts set forth above.

41.     The Transfer Agent did not inform Appleby of the existence of Account Number 502-243 until November 20, 2012, after a phone conversation with her attorneys.

42.     As of the filing of this Complaint, Defendants UHS and the Transfer Agent acknowledge Appleby's ownership of 44,898.25 shares in PSI and her entitlement to Merger Consideration at $33.75 per share for a total of $1,515,315.94. See **Composite Exhibit P, November 20, 2012 letters from Broadridge to P. Appleby**.

43.     The Transfer Agent and UHS claim that Appleby has lost the stock certificates representing her PSI shares and condition the payment of Appleby's Merger Consideration on the posting of indemnity bonds, for which she is unable to qualify according to the underwriters of said bonds, or alternatively, a showing of ownership of $3,000,000.00 to $3,500,000.00 in liquid assets:

> From briefly reviewing the information, it doesn't appear that the applicant could support the risk. Is there anyone else who could indemnify on her behalf? We will need to verify liquid assets, i.e. either cash and/or marketable securities, of approximately 2-2.5 times the value of the missing certificate. Verification could be in the form of a bank and/or brokerage statement and must not include the value of the missing certificate nor should it include retirement accounts such as 401-Ks and IRAs.

See **Exhibit Q, December 5, 2012 email correspondence from J. Santiago to T. Safi**.

44.     Appleby is a 75 year old widow, living in a rented apartment on Social Security. She has approximately $700 in the bank, owns a used car worth about $6,000 and has a life insurance policy with a cash surrender value of about $3,000.

45.     The Transfer Agent has placed a permanent stop transfer against Certificate Nos. 79, 2 and 2343. See Composite Exhibit P.

46.     Under the UHS/PSI Merger Agreement, Defendants are not required to condition payment of Merger Consideration upon the posting of an indemnity bond for lost certificates, but

11

have now chosen to require it for certificates that were never delivered to Appleby and which Appleby did not lose. Defendants refuse to pay Appleby her Merger Consideration because she is unable to meet this condition precedent unilaterally imposed by Defendants. Through unjustified, unlawful, improper, intentional and outrageous acts and omissions of Defendants set forth above, Defendants have set about to deprive and cheat Appleby out of her Merger Consideration.

47.     Defendants have damaged Appleby by failing to accurately account for her PSI stock ownership and failing to pay her Merger Consideration despite recognizing her clear entitlement thereto.

48.     Defendants' willful and intentional failure to accurately account for Appleby's PSI stock ownership and failure to pay her Merger Consideration have caused damages to Appleby including but not limited to actual damages in the amount of $1,515,307.50, consequential and incidental damages including potential increased tax consequences for delayed payment, prejudgment interest, and the cost of bringing this litigation. Further, Appleby is entitled to punitive damages under Fla. Stat. § 768.72 for Defendants intentional, reckless and outrageous conduct evidenced by the allegations contained herein and Defendants' wanton disregard of the SEC regulations governing the handling of Appleby's accounts, to wit:

(a)     Defendants' non-compliance with 17 CFR § 240.17Ad-2 by intentionally and recklessly refusing to process Appleby's transfer request with diligent and continuous attention and intentionally refusing to timely pay her Merger Consideration.

(b)     Defendants' non-compliance with 17 CFR § 240.17Ad-5 by intentionally and recklessly ignoring Appleby's written inquires concerning the status of her PSI stock and written

presentment of her PSI stock for transfer, and further, by intentionally and recklessly providing false and misleading information to Appleby concerning the amount of PSI Stock she owned, the history of her PSI stock ownership, and her entitlement to over $1.5 million in Merger Consideration.

(c)     Defendants' non-compliance with 17 CFR § 240.17Ad-6 by intentionally and recklessly failing to properly record Appleby's written inquiries and presentments.

(d)     Defendants' non-compliance with 17 CFR § 240.17Ad-10 by intentionally and recklessly maintaining false records of Appleby's stock ownership and intentionally and recklessly failing to promptly and accurately post debits and credits containing minimum and appropriate certificate detail representing every security transferred, purchased, redeemed or issued.

(e)     Defendants' non-compliance with 17 CFR § 240.17Ad-12 by intentionally and recklessly failing to assure that Appleby's securities were held in safekeeping and handled in a manner reasonably free from risk of theft, loss or destruction and protected against misuse.

(f)     Defendants' non-compliance with 17 CFR § 240.17Ad-17 by intentionally and recklessly refusing to search for Appleby as an identified lost securityholder.

(g)     Defendants' non-compliance with 17 CFR § 240.17Ad-19 by intentionally and recklessly failing to maintain and/or follow required procedures for the cancellation, storage, transportation or other disposition of securities certificates.

## COUNT I
### CONVERSION

49.    Plaintiff re-alleges the allegations in paragraphs 1 through 48, as if fully set forth herein and incorporates same by reference, and further alleges:

50.    Appleby is the owner of 44,898 shares of stock in PSI.

51.    By failing to pay Appleby the Merger Consideration and for her fractional share to which she is entitled to receive, UHS is wrongfully exercising dominion over Appleby's property which is inconsistent with Appleby's ownership of same.

52.    The Merger Consideration is identifiable and has been misappropriated by UHS for its own use.

53.    Defendants have refused, without justification in fact or law, to pay the Merger Consideration to Appleby despite their acknowledgment that she is entitled to same, which conduct is intentional, reckless and outrageous.

54.    Defendants' intentional, reckless and outrageous conduct entitles Appleby to exemplary damages under Section 768.72, Florida Statutes.

WHEREFORE, Plaintiff, Phyllis C. Appleby, demands judgment against Defendants, Universal Health Services, Inc., Psychiatric Solutions, Inc. and Broadridge Corporate Issuer Solutions, Inc. for actual, consequential, incidental and punitive damages, costs, prejudgment interest, and for such other and further relief as the Court deems just and proper.

## COUNT II
### DECLARATORY JUDGMENT

55.    Plaintiff re-alleges the allegations in paragraphs 1 through 48 as if fully set forth herein and incorporates same by reference, and further alleges:

56.     This is an action for declaratory relief pursuant to 28 U.S.C. 2201 and Fla. Stat. §§ 86.011, *et seq*. and for damages.

57.     Defendants acknowledge Appleby's ownership of 44,898 shares of stock in PSI and further acknowledge Appleby's entitlement to Merger Consideration resulting from the UHS/PSI Merger Agreement, but Defendants refuse to pay the Merger Consideration to Appleby.

58.     There exists an actual and present controversy between the parties, and Plaintiff is in doubt as to her rights and remedies.

59.     Plaintiff has no adequate remedy at law.

60.     All conditions precedent to the bringing of this action have occurred and/or have been waived by Defendants.

**WHEREFORE**, Plaintiff, Phyllis C. Appleby, prays that this Court will enter a declaratory decree as follows:

(a)     That the Court has jurisdiction of the subject matter and parties to this cause;

(b)     That Plaintiff is entitled to be paid the Merger Consideration for her ownership interest in PSI stock;

(c)     That Plaintiff is entitled to damages, including but not limited to, incidental and consequential damages; and

(d)     Granting such other and further supplemental relief pursuant to Fla. Stat. § 86.061 as may be appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all matters so triable.

Dated: December 13, 2012
Jacksonville, Florida

COOPER, RIDGE & SAFI, P.A.

George E. Ridge, Esq.
Florida Bar No.226701
gridge@attorneyjax.com
Tiffiny Douglas Safi, Esq.
Florida Bar No. 682101
tsafi@attorneyjax.com
Baywater Square Building
136 East Bay Street - Suite 301
Jacksonville, Florida 32202
Telephone     904.353.6555
Facsimile     904.353.7550

ATTORNEYS FOR PHYLLIS C. APPLEBY